**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| HANGER, INC. and HANGER NATIONAL LABORATORIES, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | No. 2:16-cv-01519-DCN |
| v. | ) ) | **ORDER** |
| ORIGINAL BENDING BRACE, LLC and CLARENCE RALPH HOOPER, JR., | ) ) ) | |
| Defendants. | ) ) ) | |

This matter is before the court on United States Magistrate Judge Bristow Marchant's report and recommendation ("R&R"), ECF No. 29, that the court deny plaintiffs Hanger, Inc. and Hanger National Laboratories, LLC's (collectively, "Hanger") motion for a preliminary injunction and deny defendants Original Bending Brace, LLC and Clarence Ralph Hooper, Jr.'s (collectively, "Hooper") motion for a preliminary injunction. For the reasons set forth below, the court adopts the R&R and denies Hanger's motion for a preliminary injunction and denies Hooper's motion for a preliminary injunction. Additionally, the court adopts those portions of the R&R which are not inconsistent with this Order.

## I.  BACKGROUND

The instant cross-motions for preliminary injunction arise out of a business dispute over the Charleston Bending Brace, an orthotic device used to treat children with scoliosis. Pls.' Mot. 1. Hooper and Dr. Frederick Reed ("Reed"), a physician colleague, invented the Charleston Bending Brace in 1979. Defs.' Resp. 5. Shortly thereafter,

1

Hooper and Reed entered into an agreement ("the Agreement") with Dobi-Simplex, Inc. ("Dobi-Simplex") under which Dobi-Simplex was given the exclusive license to manufacture, use, and sell the orthotic device.  Id. at 5–7.  Hooper founded the Charleston Bending Brace Research and Education Foundation ("CRB") in 1991.  Id. at 6.  In conjunction with his work at the foundation, Hooper acquired the domain rights for www.CBB.org in 1996.  Id.  During the course of the business relationship, both parties used the website to advertise and market the Charleston Bending Brace.  Id.; Pls.' Mot. 9.

Through a series of corporate acquisitions, Dobi-Simplex became DOBI Assets Acquisition Corporation in 1992 and changed its name back to Dobi-Simplex, Inc. ("Dobi 2").  Pls.' Mot. 2–3.  Dobi 2, Hanger's predecessor in interest, filed an application with the U.S. Patent and Trade Office ("USPTO") to register the trademark Charleston Bending Brace on March 6, 1995.  Id. at 8.  The USPTO granted Registration No. 2,101,865 for the Charleston Bending Brace on September 30, 1997.[1]  Id., Ex. C.  Dobi 2 then merged with Hanger, and Hanger was assigned the trademark.  Id. at 8, Ex. C. Hanger and Hooper attempted to renegotiate the terms of the Agreement, which had previously expired, in early 2016 but were unsuccessful.  Defs.' Resp. 8.  On April 27, 2016, Hanger was informed that Hooper had solicited business from one of its referring physicians and was using a similar designation of the "Original Bending Brace of Charleston."  Pls.' Mot. 9.

Hanger filed the instant lawsuit against Hooper on May 10, 2016, seeking damages and injunctive relief for Hooper's alleged trademark infringement of the

---

[1] Hooper claims he was never made aware of Dobi 2's trademark registration. Defs.' Resp. 7–8.

Charleston Bending Brace mark.  Compl. ¶ 1.  Hanger then filed a motion for preliminary

injunction on June 10, 2016, to enjoin Hooper from using the Charleston Bending Brace

mark as well as what it considered to be a "confusingly similar designation."  ECF No. 8.

Hooper filed a response in opposition on July 8, 2016, and likewise sought to enjoin

Hanger from using the Charleston Bending Brace mark until the instant litigation is

resolved.  ECF No. 13.

The magistrate judge issued the R&R on August 26, 2016, recommending the

court deny both motions, with Hanger's motion being denied without prejudice.  ECF No.

29.  Hooper did not file any objection to the R&R within the deadline.  Hanger, however,

filed timely objections to the R&R on September 12, 2016 arguing that its motion for

preliminary injunction should be granted.  ECF No. 30.  Hooper filed a reply on

September 21, 2016.  ECF No. 31.  The matter is now ripe for the court's review.

## II.  STANDARD

### A.  De Novo Review

This court is charged with conducting a <u>de novo</u> review of any portion of the

magistrate judge's report to which specific, written objections are made, and may accept,

reject, or modify, in whole or in part, the recommendations contained in that report.  28

U.S.C. § 636(b)(1).  The magistrate judge's recommendation does not carry presumptive

weight, and it is the responsibility of this court to make a final determination.  <u>Mathews</u>

<u>v. Weber</u>, 423 U.S. 261, 270–71 (1976).  A party's failure to object may be treated as

agreement with the conclusions of the magistrate judge.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S.

140, 150 (1985).

### B.  Preliminary Injunction

3

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  United States v. South Carolina, 840 F. Supp. 2d 898, 914 (D.S.C. 2011) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  The Supreme Court has noted that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Id. at 22.

## III.   DISCUSSION

### A.    Hanger's Objection

Hanger lists two objections to the R&R, arguing that the magistrate judge improperly: (1) presumes that Hooper's "bald assertion" that it has ceased the infringing acts renders the requested preliminary injunction unnecessary; and (2) fails to consider whether Hooper has met its heavy burden of showing that there is no reasonable expectation that any wrong will be repeated, rendering the requested preliminary injunction unnecessary.  ECF No. 30-3.  The court finds that both of these objections center on mootness concerns and Hanger uses mootness cases in support of its argument.  However, the reasoning in the R&R denying Hanger a preliminary injunction rested not on mootness but on the irreparable harm factor of Winter.  As there is no dispute between the parties as to whether the request for a preliminary injunction is moot, the court need not address this threshold justiciability doctrine.  The court finds that the Winter factors,

4

especially that of "likelihood of success on the merits," are not fulfilled such that a

preliminary injunction should issue.  Even if irreparable harm exists, Hanger has not

shown that the remaining <u>Winter</u> factors have been fulfilled, because as explained below

it has not made a clear showing that it is likely to succeed on the merits.

        1.        **Likelihood of Succeeding on the Merits**

For a preliminary injunction to issue, Hanger must first make a clear showing that

it is likely to succeed on the merits.  <u>See</u> <u>Winter</u>, 555 U.S. at 20.  Hanger argues it is

likely to succeed on the merits in this action because it can prove each element of its

trademark infringement claim.  Pl.'s Mot. 6.

> "To establish trademark infringement under the Lanham Act, a plaintiff must prove:  (1) that it owns a valid mark; (2) that the defendant used the mark 'in commerce' and without plaintiff's authorization; (3) that the defendant used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (4) that the defendant's use of the mark is likely to confuse customers."

<u>Rosetta Stone, Ltd. v. Google, Inc.</u>, 676 F.3d 144, 152 (4th Cir. 2012); <u>see also</u> 15 U.S.C.

§ 1114(1)(a).  The court addresses each element in turn.

        a.        **Valid Trademark**

Hanger argues it has a valid and protectable trademark because the USPTO

granted registration for the Charleston Bending Brace trademark to Dobi 2—its

predecessor in interest—on September 30, 1997.  Pls.' Mot. 7.  Hooper argues the mark

was obtained fraudulently, stating he has filed a petition with the USPTO to have the

registration cancelled.  Defs.' Resp. 10.

Generally, "the party claiming ownership of a mark must be the first to use the mark in the sale of goods. The party claiming ownership must also use the mark as a trademark, that is, the mark must be used to identify the source of the goods to potential customers." George & Co., LLC v. Imagination Entm't Ltd., 575 F.3d 383, 400 (4th Cir. 2009) (internal citation omitted). As long as the party claiming ownership of a mark "is the first to use a particular mark to identify his goods in a given market, and so long as that owner continues to make use of the mark, he is 'entitled to prevent others from using the mark to describe their own goods' in that market." Id. (quoting Defiance Button Mach. Co. v. C & C Metal Prods. Corp., 759 F.2d 1053, 1059 (2d Cir. 1985)). The Fourth Circuit has held that "federal registration" of a trademark "is prima facie evidence that the registrant is the owner of the mark." Id. at 400 n.15 (emphasis omitted); see also 15 U.S.C. § 1115(a) (providing that "a mark registered on the principal register provided by this chapter and owned by a party to an action shall be . . . prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce"). "Registration grants a presumption of ownership, dating ownership to the filing date of the federal registration application, and the party challenging the registrant's ownership must overcome this presumption by a preponderance of the evidence." George & Co., 575 F.3d at 400 n.15.

In this case, Hanger enjoys a presumption of ownership dating back to March 6, 1995, the date on which its predecessor in interest filed its application with the USPTO to register the Charleston Bending Brace. See id. (noting "[r]egistration grants a presumption of ownership, dating ownership to the filing date of the federal registration

6

application"). Hanger asserts that, along with its predecessors, it has marketed the

Charleston Bending Brace under the trademark at issue for over thirty years. Although

Hooper contends the mark was fraudulently obtained, resolution of its petition to cancel

Hanger's registration is still pending in the USPTO. Hooper does, however, make a

strong argument that he invented the Charleston Bending Brace and has used it

continuously since 1979—well before the May 7, 1997 date that Hanger's predecessor in

interest indicated was the mark's date of first use when it registered the trademark with

the USPTO. Nevertheless, Hanger maintains a federally registered trademark for the

Charleston Bending Brace. Hooper has several strong arguments, but the court finds that

he cannot meet his burden of overcoming the presumption—by a preponderance of the

evidence—that Hanger has ownership over a valid, protectable mark.

Therefore, the court finds that Hanger maintained a valid, protectable mark for the

Charleston Bending Brace. The court also denies Hooper's motion for preliminary

injunction because—absent some showing that he successfully cancelled the registration

of Hanger's mark with the USPTO—he is not likely to succeed on the merits.

### b.    Used in Commerce Without Consent

Hanger next argues Hooper used the mark—as well as another confusingly

similar designation—in commerce without their consent. See Rosetta Stone, 676 F.3d at

152; Pls.' Mot. 7. Hooper admits to using the mark, contending his use was lawful

because he "invented it and used it since long before the fraudulent registration with the

USPTO" but he stopped using the Charleston Bending Brace mark, as well as the

Original Bending Brace of Charleston mark, "when it became clear that the issue would

be disputed in litigation." Defs.' Resp. 13.

7

15 U.S.C. § 1127 provides that, "unless the contrary is plainly apparent from the context[,] . . . [t]he word 'commerce' means all commerce which may lawfully be regulated by Congress." Accordingly, "commerce" under the Lanham Act "is coterminous with that commerce that Congress may regulate under the Commerce Clause." Int'l Bancorp, LLC v. Societe des Bains Mer et du Cercle des Estangers a Monaco, 329 F.3d 359, 364 (4th Cir. 2003); see also U.S. Const. art. I, § 8, cl. 3 (providing, in relevant part, that "[t]he Congress shall have Power . . . to regulate Commerce with foreign nations, and among the several States"). Section 1127 defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not merely to reserve a right in a mark." 15 U.S.C. § 1127. A mark on goods is deemed to be used in commerce when (1) the mark "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale"; and (2) "the goods are sold or transported in commerce." Id. With regard to services, a mark is in use in commerce when the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States . . . and the person rendering the services is engaged in commerce in connection with the services." Id.

Here, it is clear that Hooper did not have Hanger's permission to use the Charleston Bending Brace mark, or the similar Original Bending Brace of Charleston mark, in the ordinary course of trade. After the parties were unable to reach agreeable terms to facilitate the renewal of the Agreement, Hooper unilaterally decided to create a

8

"confusingly similar" designation and enter it into commerce.  Hanger included a

screenshot of the CBB website, Pls.' Mot., Ex. F, as well as Hooper's other marketing

materials, to demonstrate Hooper has used the mark in commerce, id., Exs. G, H, I, J.

The CBB website stated that "[a]ll responsibilities for designs by C. Ralph Hooper, Jr.,

CPO will be done under the name Original Bending Brace, LLC.  Manufacturing and

design will be coordinated by the Charleston Bending Brace Foundation."  Id., Ex. F.

Moreover, the CBB website offered a training course, taught by Hooper, for the Original

Bending Brace of Charleston.  Id., Ex. F.  Hanger further alleges that Hooper has

marketed the orthotic device to referring physicians by soliciting customers using the

name "Charleston Bending Brace Foundation" and making reference to the "Original

Bending Brace (formerly Charleston Bending Brace)" in email solicitations.  Id., Ex. J.

The emails likewise promote a "Charleston Bending Brace Certification Course" and

contain a flyer titled "Re-introducing the Original Bending Brace of Charleston."  Id.  In

addition, Hooper has advertised the orthotic device in trade publications.  Specifically,

Hanger included a copy of an advertisement that appeared in the April 2016 issue of

Orthotics and Prosthetics Almanac, "a publication disseminated widely within the

orthotics and prosthetics industry, for a 'Charleston Bending Brace Certification

Course.'"  Id. at 13, Ex. G.

Although Hooper maintains that he only used the Original Bending Brace of

Charleston mark temporarily—for less than a week—and stopped using both marks when

litigation ensued and that he "has no intention of using either mark until this dispute is

resolved, and instead is using the mark Original Bending Brace,"  the court is persuaded

by Hooper's use of the "confusingly similar" Original Bending Brace of Charleston

designation and references to Charleston Bending Brace in email solicitations to referring physicians.  Thus, the court finds that Hanger has met its burden of showing Hooper sold the goods in commerce without its consent.

### c.    Used in Offering for Sale or Advertising of Goods and Services

For the same reasons outlined in Part III.A.3, the court finds that Hooper "used the mark (or an imitation of it) 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services." Rosetta Stone, 676 F.3d at 152.  The court finds that Hanger made a clear showing that Hooper used the Charleston Bending Brace mark—as well as the Original Bending Brace of Charleston mark, an imitation of it—in connection with the sale, offering for sale, distribution, or advertising of the orthotic device. See id.

### d.    Likelihood of Confusion

Hanger next contends that Hooper's use of the Charleston Bending Brace mark, as well as the "confusingly similar designation" Original Bending Brace of Charleston, is likely to cause confusion. See Rosetta Stone, 676 F.3d at 152; Pls.' Mot. 14.  Hooper counters that Hanger failed to demonstrate a likelihood of confusion because its "primary evidence for 'confusion in the marketplace' is incorrect." Defs.' Resp. 15.

"A likelihood of confusion exists 'if the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.'" George & Co., 575 F.3d at 393 (quoting CareFirst of Md., Inc v. First Care, P.C., 434 F.3d 263, 267 (4th Cir. 2006)).  In analyzing the likelihood of confusion, the Fourth Circuit generally considers the following nine factors relevant:

> (1) the strength and distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

Rosetta Stone, 676 F.3d at 153.  "Not all of these factors are of equal importance, 'nor are they always relevant in any given case.'"  George & Co., 575 F.3d at 393 (quoting Anhueser-Busch, Inc. v. L&L Wings, Inc., 962 F.2d 316, 320 (4th Cir. 1992)); see also Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789, 804 (4th Cir. 2001) ("The importance and relevance of each factor will, of course, vary from case to case.").  However, the Fourth Circuit has indicated that actual confusion "is often paramount."  Lyons, 243 F.3d at 804.  When a "defendant in an infringement case has elected to use a mark similar to that of a competitor's distinctive mark, and, as a result, has actually confused the public, our inquiry ends almost as soon as it begins."  Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 467 (4th Cir. 1996).

　　　Hanger first contends that its mark is commercially strong.  "The strength of a mark is the degree to which a consumer in the relevant population, upon encountering the mark, would associate the mark with a unique source."  First Care, 434 F.3d at 269.  In assessing the commercial strength, a court "looks at the marketplace and asks 'if in fact a substantial number of present or prospective customers understand the designation when used in connection with a business to refer to a particular person or business enterprise."  Id.  "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties."  Id.

(quoting Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co., 22 F.3d 1527, 1533 (10th Cir. 1994)).  Hooper argues that the mark has been closely associated with him from the very beginning, pointing to a 1992 journal article that outlined the history of the Charleston Bending Brace and noting his name and picture have appeared with the mark "countless times."  ECF No. 13 at 17.  Hooper was, in fact, the inventor of the orthotic device, which was named after his hometown, and the "scientific literature on such braces universally associates Hooper with the Charleston Bending Brace."  Id.  Given that "customers understand the designation when used in connection with a business to refer to a particular person," Hooper, this factor actually weighs against Hanger.  U.S. Conference of Catholic Bishops v. Media Research Ctr., 432 F. Supp. 2d 616, 624 (E.D. Va. 2006).

Second, Hanger contends the similarity of the Charleston Bending Brace mark and the Original Bending Brace of Charleston is undeniable.  In determining whether marks are similar, courts "must examine the allegedly infringing use in the context in which it is seen by the ordinary customer."  Id. (quoting Anheuser-Busch, Inc., 962 F.2d at 319).  Because both marks include "Charleston" and "Bending Brace" in this case, and both employ the same purple color scheme, similarity cannot be disputed and this factor weighs in favor of Hanger.

Third, the goods and services that the marks identify are undeniably similar.  Both marks identify bending braces that are used for nonsurgical nighttime scoliosis management, and they are marketed toward the same consumers.  Therefore, this factor favors Hanger.

12

Neither party submitted evidence of the fourth factor regarding the similarity of the facilities.  Thus, this factor is irrelevant to the court's analysis.

With regard to the fifth factor, both parties appear to use similar advertising methods and target the same set of consumers.  Hooper uses the CBB website, which was long used to advertise the Charleston Bending Brace mark.  Additionally, the CBB website employs a purple color scheme that is virtually indistinguishable from Hanger's website.  Although neither party submitted much support for this factor—and it is unclear which website came first—based upon the limited information before the court, the court finds that the fifth factor tips in favor of Hanger.

Sixth, Hanger contends Hooper is intentionally infringing upon its trademark for the Charleston Bending Brace.  "If there is intent to confuse the buying public, this is strong evidence establishing the likelihood of confusion, since one intending to profit from another's reputation generally attempts to make his signs, advertisements, etc., to resemble the other's so as deliberately to induce confusion."  George & Co., LLC, 575 F.3d at 397 (quoting Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1527 (4th Cir. 1984)).  The court finds that Hanger has made an ample showing that Hooper intended to create a similar mark and confuse the public into believing it was the same one he has been using all along.  This is evidenced by the fact that Hooper called his orthotic device the "Original Bending Brace of Charleston" and advertised it as "Re-introducing the Original Bending Brace of Charleston."  Therefore, the court finds that Hooper's actions demonstrate an intent to deceive the consuming public into believing the Original Bending Brace of Charleston is the same as the Charleston Bending Brace.

13

As indicated above, "actual confusion" is one of the most important factors in the likelihood of confusion analysis.  See Sara Lee Corp., 81 F.3d at 467 (noting when a "defendant in an infringement case has elected to use a mark similar to that of a competitor's distinctive mark, and, as a result, has actually confused the public, our inquiry ends almost as soon as it begins").  Hanger contends that Hooper's "conduct is emerging and, absent discovery on the precise issue, there is not yet a developed evidentiary record regarding consumers' actual confusion."  Pls.' Mot. 17.  Hanger filed the affidavit of Jeffrey D. Rosen, the director of Hanger, in an attempt to establish that its customers were actually confused about the difference between the two marks.  In his affidavit, Rosen stated that one doctor, Dr. Steve Taylor ("Dr. Taylor"), an existing Hanger customer, intended to fax his request for an orthotic device on a Hanger order form to Original Bending Brace.  Rosen Aff. at 2.  When Hanger representatives contacted Dr. Taylor, "[h]e explained that Mr. Hooper had called his office and stated that OBB was now marketing and selling the orthotic device."  Id. at 3.  Hooper, however, countered this assertion with an affidavit from Dr. Taylor himself, in which he states that no confusion exists in the marketplace.  To the contrary, in his affidavit, Dr. Taylor indicates that he "deliberately ordered an Original Bending Brace from Original Bending Brace" and "was aware he was not ordering the brace from Hanger."  ECF No. 15-6 at 2.  Taylor states he was "not confused or mistaken" about what he was ordering or from whom he was ordering it.  Id. at 3.  He then went on to state that "[b]ased on [his] experience, there is no 'confusion in the marketplace' regarding the Original Bending Brace, as incorrectly stated in Mr. Rosen's affidavit," and "[t]he series of events referred

14

to in Mr. Rosen's affidavit is simply the transition from an old order form to a new order form." Id.

The court finds significant Hanger's weak showing of actual confusion in the marketplace, coupled with Hooper's introduction of an affidavit from the actual customer that directly refutes Hanger's only evidence as to this issue. As the Fourth Circuit has indicated in several decisions, actual confusion is "often paramount" in trademark infringement cases. See e.g., George & Co. LLC v. Imagination Entm't Ltd., 575 F.3d 383, 393 (4th Cir. 2009); see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 937 (4th Cir. 1995) (noting that the actual confusion factor is "entitled to substantial weight as it provides the most compelling evidence of likelihood of confusion"). Hanger's failure to show actual confusion is fatal because its inability to demonstrate the likelihood of confusion element of its trademark infringement claim means it is not likely to succeed on the merits.

With respect to the eighth element, Hanger cannot argue that Hooper's product is of poor quality. Hooper, as noted several times above, invented the Charleston Bending Brace and is "recognized as 'one of the foremost experts on Orthotic Scoliosis Treatment nationally.'" Defs.' Resp. 17, Ex. 12. Indeed, Hooper raises serious concerns that, without him, Hanger's product will deteriorate and confuse the consuming public into believing the Charleston Bending Brace is still associated with him. Although Hanger contends this factor has little relevance, the court disagrees and finds that this factor weighs against Hanger.

Finally, although Hanger contends "consumers are unlikely to distinguish" the marks, the court finds this argument is without merit. As the Fourth Circuit has stated,

15

"[b]arring an unusual case, buyer sophistication will only be a key factor when the relevant market is not the public at large." Sara Lee, 81 F.3d at 464. Here, the consuming public consists of physicians who prescribe the subject orthotic devices to treat children with scoliosis. Hanger grossly underestimates the ability of these physicians to distinguish among products, arguing that "[w]hile medical training equips these physicians with a certain level of professional sophistication in the medical field, it does not prepare them to adequately distinguish" the marks. Pls.' Mot. 17–18. The court would certainly hope that physicians are capable of distinguishing among products they use to treat patients in their specialized fields, a conclusion only further supported by the Taylor affidavit. Therefore, the court finds this factor weighs in favor of Hooper.

Based on the foregoing, the court finds that Hanger has failed to demonstrate a likelihood of confusion in this case. Given that Hanger must prove this element to prevail on its trademark infringement claim, Hanger failed to make a clear showing that it is likely to succeed on the merits of its trademark infringement claim.

## 2.    Irreparable Harm

In the next element of the preliminary injunction analysis, Hanger must make a clear showing it will be irreparably harmed in the absence of preliminary injunctive relief. See Winter, 555 U.S. at 20.

"In Lanham cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion." Scotts Co. v. United Indus. Corp., 315 F.3d 264, 273 (4th Cir. 2002). "A finding of irreparable harm usually follows a finding of unlawful use of a trademark and a likelihood of confusion." Ledo Pizza Sys., Inc. v. Singh, 2013 WL 5604339, at *3 (D.

16

Md. Oct. 10, 2013).  In <u>Merry Maids Ltd. P'ship v. Kamara</u>, 33 F. Supp. 2d 443, 445 (D. Md. 1998) (quoting <u>Long John Silver's, Inc. v. Wash. Franchise, Inc.</u>, 1980 WL 30249, at *12 (E.D. Va. June 24, 1980)), the court concluded that the defendants' unauthorized use of the plaintiff's trademark gave rise to irreparable harm because the plaintiff "lost control of its business reputation," "a substantial likelihood of confusion of the purchasing public" was shown, "no meaningful monetary recovery [was] available," and "an inherent injury to the good will and reputation of the plaintiff" resulted from the infringement.

Because Hanger failed to demonstrate a likelihood of confusion, the court finds that it cannot prove irreparable harm in this case.  <u>See</u> <u>Singh</u>, 2013 WL 5604339, at *3 ("A finding of irreparable harm usually follows a finding of unlawful use of a trademark and a likelihood of confusion.");  <u>See also</u> <u>Scotts Co.</u>, 315 F.3d at 273 ("In Lanham cases involving trademark infringement, a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion.").

## A.    Balance of Equities

Next, Hanger must make a clear showing that the balance of the equities tips in its favor.  <u>See</u> <u>Winter</u>, 555 U.S. at 20.  Hanger argues it can do so here because "[w]hatever harm [Hooper] might claim as a result of a preliminary injunction would be self-inflicted as it would stem from [his] infringement of [Hanger's] trademark rights."  Pls.' Mot. 16.

As the court finds that Hanger failed to make a sufficient showing that it is likely to succeed on the merits of its trademark infringement claim, Hanger has also failed to make a clear showing that the balance of equities tips in its favor.  Hanger claims it has "invested thirty years of time, money, and resources to grow and protect the Charleston

17

Bending Brace brand, to federally register and maintain a registration for the Trademark, and to acquire strong consumer recognition and goodwill." Pls.' Mot. 21. Nevertheless, Hooper counters that he is the one who has established the recognition and goodwill. Further, he contends Hanger's conduct is inequitable because it went behind his back to "fraudulently register" the trademark it purports to own for Charleston Bending Brace. The court finds that Hanger has not made a "clear showing" that the balance of equities tips in its favor. Further, because several outstanding issues need to be resolved prior to any party being able to succeed on the merits in this case, the court finds that a preliminary injunction is not equitable here.

### B.    Public Interest

Finally, Hanger must make a clear showing that an injunction is in the public interest in this case. See Winter, 555 U.S. at 20. Hanger argues the public will be harmed if Hooper is permitted to continue "misleading consumers into the belief that OBB's orthotic device is of the same quality they have come to expect under the Charleston Bending Brace trademark." Pls.' Mot. 17.

Protecting trademark rights and preventing trademark infringement is in the public interest. See Rebel Debutante, LLC v. Forsythe Cosmetic Grp., Ltd., 799 F. Supp. 2d 558, 581 (M.D.N.C. 2011); Merry Maids Ltd. P'ship v. Kamara, 33 F. Supp. 2d 443, 446 (D. Md. 1998). "The purpose of a trademark is to protect the public from confusion about 'the identity of the enterprise from which goods and services are purchased.'" Toolchex, Inc. v. Trainor, 634 F. Supp. 2d 586, 594 (E.D. Va. 2008) (quoting AMP Inc. v. Foy, 540 F.2d 1181, 1186–86 (4th Cir. 1976)). "Preventing consumers from being confused serves the public interest, as does preventing trademarks from being used

18

deceptively, protecting the interests of trademark owners, and enforcing valid contracts." Id. (internal citations omitted).

While it is certainly true that protecting trademark rights and preventing trademark infringement is in the public interest, in this case, the court finds that a preliminary injunction would not serve the public interest. The consuming public—the physicians who prescribe bending braces—is fully capable of distinguishing between the two competing products, as evidenced by Dr. Taylor's affidavit. At this point in time, Hanger is unable to demonstrate public confusion as to the identity of the competing trademarks in this case. Accordingly, the court finds that a preliminary injunction is not in the public interest in the instant case.

### B.    Plaintiff's Reply

Hooper filed a reply on September 21st, 2016 that partially raised new objections against the R&R. ECF No. 31. While it is not determinative that Hooper filed objections under the label of a reply, 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) require specific written objections to be filed within fourteen days of the date of service of the R&R. The Notice of Right to File Objection to Report and Recommendation, which was filed alongside the R&R, specifically provides that "specific written objections must be filed within fourteen [ ] days of the date of service of [the R&R]." ECF No. 29 at 4. The R&R was filed on August 29, 2016, giving both parties until September 15, 2016 to file objections. Hooper never filed any objections and filed his reply on September 21, 2016. Thus, if any portion of Hooper's reply was meant to be construed as an objection to the R&R, it was untimely and the court finds that those portions of the reply cannot be construed as objections to the magistrate's R&R. To the extent that any arguments in

19

Hooper's reply are meant to challenge the conclusions in the R&R, the court reviews those arguments under the clear error doctrine.

Hooper includes a number of arguments that challenge the denial of Hooper's motion for preliminary injunction. <u>See</u> ECF No. 31 at 5 ("[a]ny preliminary injunction order that the Court enters should enjoin Hanger from using the mark during this litigation."). Hooper also reasserts that Hanger fraudulently registered the trademark. Although Hooper contends the mark was fraudulently obtained, resolution of its petition to cancel Hanger's registration is still pending in the USPTO. As explained above, Hanger maintains a federally registered trademark for the Charleston Bending Brace, and Hooper has not met his burden of overcoming the presumption—by a preponderance of the evidence—that Hanger has ownership over a valid, protectable mark. Absent some showing that Hooper has successfully cancelled the registration of Hanger's mark with the USPTO, any use of the mark by Hooper constitutes "infringing activity." Ultimately, these arguments are untimely because the reply was filed past the September 15, 2016 deadline to file an objection. Since any argument that the R&R inappropriately denied Hooper's motion for preliminary injunction is time-barred, the court reviews it under the clear error doctrine. The court finds no such error, and denies Hooper's motion for a preliminary injunction.

## IV.  CONCLUSION

For the reasons set forth above, the court **ADOPTS** the magistrate judge's R&R, ECF

No. 29, **DENIES** plaintiff's motion for a preliminary injunction, ECF No. 8, and

**DENIES** defendant's motion for a preliminary injunction, ECF No. 13.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**February 13, 2017**
**Charleston, South Carolina**

21